SMITH *v.* WHEAT.

Opinion delivered February 16, 1931.

*Bridges, McGaughey & Bridges,* for appellant.

HART, C. J., (after stating the facts). It is the settled rule in equity in this State that conveyances to members of the household and to near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; and, when they are voluntary, they are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors. *Wilks* v. *Vaughan,* 73 Ark. 174, 83 S. W. 913; *Davis* v. *Cramer,* 133 Ark. 244, 202 S. W. 239; *Barham* v. *Federal Reserve Bank,* 176 Ark. 1082, 5 S. W. (2d) 318; and *American Company of Arkansas* v. *Wheeler,* 181 Ark. 444, 26 S. W. (2d) 115.

In this connection, it may be stated that these cases call for the application of that rule of evidence that where parties have it in their power to explain suspicious circumstances connected with a transaction, the court trying the case may regard their failure to do so as a proper subject for comment and regard their failure to produce evidence within their power as a circumstance against them. *Miller* v. *Jones,* 32 Ark. 337; *Burke* v. *Napoleon Hill Cotton Co.,* 134 Ark. 580, 202 S. W. 827; *Gallup* v. *St. Louis I. M. & So. Ry. Co.,* 140 Ark. 347, 215 S. W. 586; and *Ramey* v. *Fletcher,* 176 Ark. 196, 2 S. W. (2d) 84.

This is in application of Lord Mansfield's maxim that "all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted." *Kirby* v. *Tallmadge,* 160 U. S. 379, 16 S. Ct. 349.

When the circumstances under which a transfer of property by a debtor are suspicious, the failure of the parties to testify or to produce available explanatory or rebutting evidence is a badge of fraud. 27 C. J. 494.

The rule also applies where the circumstances attending the transaction are suspicious, and the parties fail to produce any explanation of the suspicions attending the transfer by testifying or giving some explanatory evidence. *Griggs* v. *Crane's Trustee,* 179 Ky. 48, 200 S. W. 317.

In the present case the evidence shows that Fuller was financially embarrassed when the deed in question was made on the 16th day of October, 1928, to his brother-in-law, G. B. Wheat, and that Fuller filed a voluntary petition in bankruptcy on the first of November, 1928. Fuller testified that he did not know that he was insolvent on the 16th day of October, 1928, and that Wheat did not know anything about his financial condition. In this respect, he is corroborated by Wheat, but they are contradicted by the attendant circumstances. According to their own testimony, Wheat came down there about the first of September, 1928, and went to work for Fuller, closing out his barber shop business in Pine Bluff. He advanced $500 in cash to Fuller without making any inquiry whatever about his solvency. He does not give any satisfactory account about where he got the money. According to his testimony, he went from his own home in Pine Bluff to Shreveport and carried the money in his pocket. He had never kept it in the bank, although he carried a small account in the bank from his barber shop business in Pine Bluff. Neither Fuller nor Wheat had any recollections whatever as to the kind of money which the $500 consisted of. Fuller testified in a general way that he used it in purchasing lumber stock for his firm, but he does not give any detailed or satisfactory account of the transaction. It will be remembered that Fuller testified in the bankruptcy proceeding that the consideration for the deed was an old debt which he owed Wheat. In his testimony in the present case, the old

debt passes out and a new consideration in cash is given. In this connection it may be stated that according to his own testimony, Wheat advanced the $500 a month before the deed was executed without any request for the payment of his old debt. Fuller testified that Wheat had been trying for some time, while he lived at Pine Bluff to purchase the four lots in question, but that he had refused to sell them to him. Later on in his testimony he stated that for some time he had had the lots in question in the hands of an agent, and that his agent had been unable to sell them. This he gave as the reason for selling them at a low price to his brother-in-law. When all the attendant circumstances are considered, we are of the opinion that a preponderance of the evidence shows that there was no consideration passed between Wheat and Fuller when the property in question was conveyed by Fuller to Wheat and that the transaction should be treated as a voluntary conveyance. The evidence in the record shows that Fuller was insolvent at the time, and the case calls for the application of the rule of law in this respect above set out.

Therefore, the decree will be reversed, and the cause remanded with directions to the chancery court to set aside the conveyance of the property in question from Fuller to Wheat as fraudulent, and for such further relief as appellant may be entitled to in equity which is not inconsistent with this opinion. It is so ordered.